**UNITED STATES of America,**
**Appellee–Cross–Appellant,**

v.

**Kenneth MCGRIFF, Defendant–**
**Appellant–Cross–Appellee.**

**Nos. 07–1371–cr, 07–1626–cr.**

United States Court of Appeals,
Second Circuit.

July 24, 2008.

Richard Ware Levitt, New York, N.Y., for Appellee–Cross–Appellant.

Carolyn Pokorny, Assistant United States Attorney (Susan Corkery and Jeffrey Rabkin, Assistant United States Attorneys, on the brief) for Benton J. Campbell, United States Attorney for the Eastern District of New York, New York, N.Y., for Defendant–Appellant–Cross–Appellee.

PRESENT: Hon. JON O. NEWMAN, Hon. GUIDO CALABRESI, Hon. B.D. PARKER and Circuit Judges.

### SUMMARY ORDER

Kenneth McGriff appeals his convictions for a variety of racketeering and conspiracy offenses involving drug distribution and murder-for-hire. He argues that the convictions were based on insufficient evidence, and that the anonymous jury that convicted him was tainted after two jurors recognized people they knew in the courtroom, expressed their fears to the rest of the jury, and were removed.

"A defendant challenging the sufficiency of trial evidence bears a heavy burden, and the reviewing court must view the evidence presented in the light most favorable to the government and draw all reasonable inferences in the government's favor." *United States v. Gagliardi,* 506

F.3d 140, 149 (2d Cir.2007) (internal quotation marks omitted) (quoting *United States v. Giovanelli,* 464 F.3d 346, 349 (2d Cir.2006) (per curiam), *cert. denied,* —— U.S. ——, 128 S.Ct. 206, 169 L.Ed.2d 145 (2007)). Thus a jury verdict must be affirmed unless "no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt." *Gagliardi,* 506 F.3d. at 149–50 (internal quotation marks omitted).

McGriff cannot meet this high burden. Multiple witnesses testified about their roles in McGriff's drug distribution trade, and their testimony was sufficient for a rational juror to conclude that the government had proven the existence of the "McGriff Enterprise." It is a closer question whether the murders of Eric Smith and Troy Singleton were horizontally and vertically related to that enterprise, as required to show a pattern of racketeering activity. *See, e.g., United States v. Daidone,* 471 F.3d 371, 376 (2d Cir.2006). But the record contains direct and sufficient testimony that McGriff ordered the murders not simply for revenge or personal selfaggrandizement, but to re-establish and maintain the reputation of his enterprise after Smith and Singleton disrespected him. That reputation, in turn, was important to the strength of the enterprise—indeed, McGriff was able to obtain drugs on credit based on the strength of his reputation. The direct testimony of those involved in McGriff's enterprise was therefore sufficient to link the murders to the goals of the enterprise itself.

McGriff's next argument is that the District Court failed to conduct a sufficient *voir dire* of the jurors following revelations that two of them had recognized people in the courtroom and were frightened. McGriff argues that this fear tainted the jury, and that a mistrial should have been

declared. "[A] trial judge's handling of alleged juror misconduct or bias is only reviewable for abuse of discretion." *United States v. Bufalino,* 576 F.2d 446, 451–52 (2d Cir.1978) (internal quotation mark omitted); *see also United States v. Abrams,* 137 F.3d 704, 708 (2d Cir.1998) (per curiam); *United States v. Gaggi,* 811 F.2d 47, 51 (2d Cir.1987). The District Court did not abuse that discretion here. After Juror 12 expressed fear—both to the court and to her fellow jurors—upon seeing an old acquaintance in the courtroom, the District Court conducted an individual *voir dire* of each juror. All except for Juror 6—who also said he recognized someone in the courtroom and was frightened—said that they were essentially unaffected and still willing and able to deliberate fairly and impartially. The jurors' self-assessments in this regard were consistent with the District Court's observation that "[t]hese folks have been pretty consistently calm. Nobody has shown any emotional reaction here, from my observations." In these circumstances, the District Court did not abuse its discretion by dismissing Jurors 6 and 12 and ordering the remainder of the jury to return to deliberations.

Finally, McGriff challenges the constitutionality of the federal murder-for-hire statute, 18 U.S.C. § 1958, which he says violates the Commerce Clause. This claim must fail because McGriff planned and coordinated the murders of Smith and Singleton using a two-way pager, which is itself a "facility of interstate commerce" that falls within the Commerce Clause power described by the Supreme Court in *United States v. Lopez,* 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (identifying "instrumentalities of interstate commerce" as one of the "three broad categories of activity that Congress may regulate under its commerce pow-

er"). Under our caselaw, a showing that a regulated activity substantially affects interstate commerce is unnecessary when Congress regulates activity involving an instrumentality or facility of interstate commerce. *United States v. Gil,* 297 F.3d 93, 100 (2d Cir.2002); *see also United States v. Perez,* 414 F.3d 302, 305 (2d Cir.2005) (per curiam) ("[E]ven though Perez's calls to Casiano were wholly intrastate communications, the fact that they were made using the SNET network, a facility involved in interstate commerce, leads us to conclude that Perez was properly subject to prosecution for using interstate commerce facilities in the commission of murder-for-hire.").

For the foregoing reasons, we AFFIRM the judgment of the District Court.