UNITED STATES of America,
Appellee,

v.

Rafael FRANCISCO, a/k/a 67, Omar Flores, Jose Sanchez–Fernandez, a/k/a Eddie, Elyn Reynoso, a/k/a BB, Vladimir Delacruz, a/k/a Vladi, Defendants,

Hector Raymond Peña, a/k/a C.O. Montana, Jose Peña, a/k/a Chelo, Defendants–Appellants.

Nos. 14–3837, 15–0119.

United States Court of Appeals, Second Circuit.

March 15, 2016.

Laurie A. Korenbaum, Micah W.J. Smith, Margaret Garnett, Assistant U.S. Attorneys, for Preet Bharara, U.S. Attorney for the Southern District of New York, New York, NY, for Appellee.

Jane Fisher–Byrialsen, Fisher & Byrialsen PLLC, New York, NY, for Defendant–Appellant Hector Raymond Peña.

Elizabeth E. Macedonio, New York, NY; Matthew B. Keller, New York, NY, for Defendant–Appellant Jose Peña.

Present: ROBERT A. KATZMANN, Chief Judge, RAYMOND J. LOHIER, JR., and CHRISTOPHER F. DRONEY, Circuit Judges.

## SUMMARY ORDER

Defendants Hector Raymond Peña and Jose Peña appeal from judgments of conviction entered on October 3, 2014, and December 19, 2014, respectively, in the United States District Court for the Southern District of New York (Marrero, *J.*). The charges against the defendants arose from the deaths of Pedro Medina, Jose Suarez, and Juan Carmona in 1997. The government alleged that Hector Peña and certain co-conspirators were hired by members of a drug ring known as "Solid Gold" to murder Pedro Medina, a drug dealer operating on Manhattan's Lower East Side, in order to take over his territory. The government further alleged that, less than two months later, Hector Peña, his brother, Jose Peña, and co-conspirators were hired by a drug dealer named Jose Acosta to murder Jose Suarez and Juan Carmona in revenge for the death of Acosta's brother during a drug robbery. Following a two-week jury trial, Hector Peña was convicted of three counts of murder for hire in violation of 18 U.S.C. § 1958, two counts of conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958, and three counts of murder through use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(j). Jose Peña was convicted of two counts of murder for hire in violation of 18 U.S.C. § 1958, one count of conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958, and two counts of murder through use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(j). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Hector Peña's Appeal

In a counseled brief, Hector Peña argues that the district court abused its discretion by denying his request to continue the trial date. Trial was originally set to begin on May 21, 2012. After the trial date was adjourned several times to June 10, 2013, at either the government's request or on the joint request of the parties, the government requested a further adjournment so that the Peñas could be tried jointly with a newly added defendant, Vladimir Delacruz. Over the Peñas' objection, the court adjourned the trial date to October 15, 2013, warning counsel, "I will not allow any further delays after the four months that I have now indicated I am prepared to consider." Hector Peña App. 68–71. On August 21, 2013, Hector Peña's appointed counsel requested that the trial date be further adjourned to a date in February 2014 because of a scheduling conflict that he had previously failed to bring to the court's attention. The district court denied the adjournment and appointed new counsel to represent Hector Peña at trial, which went forward on October 15, 2013.

■ Hector Peña now argues that the district court's refusal to adjourn the trial date constituted an abuse of discretion and deprived him of the right to counsel of his choice. This argument lacks merit. A district court has "broad discretion ... on matters of continuances," *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), and we will reverse for abuse of that discretion only when the denial of the requested continuance "was an 'arbitrary action that substantially impaired the defense,'" *United States v. O'Connor*, 650 F.3d 839, 854 (2d Cir.2011) (quoting *United States v. Beverly*, 5 F.3d 633, 641 (2d Cir.1993)). Here, the district court based its decision on the interest of

the defendants in a speedy trial, the demands on the court's schedule and docket, and defense counsel's failure to bring the conflict to the court's attention in a timely manner. Given these considerations, the district court was well within its discretion to deny a continuance. Furthermore, as an indigent defendant, Hector Peña had no right to counsel of his choice. *See United States v. Gonzalez–Lopez,* 548 U.S. 140, 151, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) ("[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."). Nor has he argued that the attorneys who represented him at trial rendered ineffective assistance. Accordingly, he has not carried his burden to demonstrate that the denial of a continuance "substantially impaired the defense." *O'Connor,* 650 F.3d at 854 (quoting *Beverly,* 5 F.3d at 641).

In a supplemental *pro se* brief, Hector Peña further argues, first, that the government failed to present sufficient evidence that he received anything of pecuniary value in exchange for committing the murders or that he used a facility of interstate commerce; second, that the district court abused its discretion by admitting testimony regarding and photographs of the condition of the victims' bodies when they were discovered; and third, that the murder-for-hire statute is unconstitutional. These arguments also lack merit.

"A defendant challenging the sufficiency of the evidence bears a heavy burden." *United States v. Kozeny,* 667 F.3d 122, 139 (2d Cir.2011). Although we review such a claim *de novo,* we must view the evidence in the light most favorable to the government, and we may "enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Temple,* 447 F.3d 130, 136 (2d Cir.2006) (quoting *United States v. Guadagna,* 183 F.3d 122, 130 (2d Cir.1999)).

■ The federal murder-for-hire statute prohibits commission of murder "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value," which it defines as "anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage." 18 U.S.C. § 1958; *see also United States v. Frampton,* 382 F.3d 213, 217 (2d Cir.2004) (holding that the murder-for-hire statute criminalizes "only those instances in which one party agrees to commit a murder in exchange for another party's provision (or future promise) of payment"). Here, the evidence amply demonstrated that Hector Peña was promised and actually received things of pecuniary value in exchange for the murders of Pedro Medina, Jose Suarez, and Juan Carmona. Regarding the Medina murder, one of the government's cooperating witnesses, Ramon Flores, testified that he promised Hector Peña and a co-conspirator "$6,000 and whatever Pedro had on him," Tr. 230, to carry out the murder, and in fact paid them almost $6,000 and gave them a Jaguar vehicle after it was complete. Regarding the Suarez and Carmona murders, Flores testified that Hector Peña, Jose Peña, and an accomplice received an up-front payment from Jose Acosta, the drug dealer who ordered the hit. Another cooperating witness, Bernardo Sabino, testified that he delivered an additional payment to the Peñas and their accomplices on Acosta's behalf after they carried out the murders. Yet another cooperating witness, Jose Martes, testified that, before the murders, Hector Peña told him that the contract with Acosta was worth $30,000. This evidence was plainly

sufficient to sustain the jury's verdict with respect to the pecuniary gain element. *See* 18 U.S.C. § 1958(a).

■ Hector Peña further argues that the government failed to meet its burden with respect to the jurisdictional element of the murder-for-hire statute, which requires the government to prove "travel in interstate or foreign commerce, or ... use [of] the mail or any facility of interstate or foreign commerce." 18 U.S.C. § 1958(a). However, Flores testified that he used a pay phone to contact Hector Peña about the Medina murder on more than one occasion. Similarly, Sabino testified that he used a pay phone to notify Acosta when the murders were about to be carried out. The parties entered a stipulation that "all pay phones in New York City including those providing service from in or about 1994 through in or about 2002 have the capability of placing and receiving long distance phone calls, including out of state and international phone calls." Accordingly, the evidence was sufficient to satisfy the statute's jurisdictional element. *See United States v. Perez*, 414 F.3d 302, 305 (2d Cir.2005).

The second argument raised in Hector Peña's *pro se* brief is that the district court abused its discretion by admitting testimony about the condition of Jose Suarez's and Juan Carmona's bodies at the time they were discovered and photographs of the victims' wrists. At trial, Barbara Butcher, a forensic investigator from the New York City Medical Examiner's Office, testified that the victims' bodies were extensively charred in a way that suggested that they had been burned after death. She testified that one of the bodies had a plastic "flex cuff" on one wrist, and that the other had a pair of metal handcuffs looped around his wrist. Defense counsel did not object to the admission of this testimony. The court also admitted, without objection, crime scene photographs showing the victims' extremities. However, the court denied the government's request to admit photographs of Juan Carmona's body for the purpose of rebutting the defense's argument that he may have been alive at the time he and Jose Suarez were discovered inside the burning car. Hector Peña now argues that the testimony and photographs should have been excluded under Rule 403 of the Federal Rules of Evidence.

Rule 403 provides that relevant evidence may be excluded at trial if "its probative value is substantially outweighed by a danger of ... unfair prejudice[.]" Fed. R.Evid. 403. A district court has "broad discretion" over the admission of evidence, and we will find that it abused that discretion "only when the court has 'acted arbitrarily or irrationally.'" *United States v. Nektalov*, 461 F.3d 309, 318 (2d Cir.2006) (quoting *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir. 1999)). Where, as here, an objection has not been raised below, we review only for plain error. *United States v. Marcus*, 560 U.S. 258, 262, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010). Under that standard, the defendant must demonstrate that "(1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009)).

■ Hector Peña has failed to demonstrate that the district court's evidentiary decisions constituted plain error. Both Butcher's testimony regarding the condition of the bodies and the crime scene

photographs showing restraints on the victims' wrists were relevant to corroborate the cooperating witnesses' descriptions of how the murders were carried out and to rebut the defense's contention that their testimony was inconsistent with that of the witnesses who discovered the bodies. While this evidence may have been shocking, "[p]robative evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact." *United States v. Salameh*, 152 F.3d 88, 123 (2d Cir.1998). In light of the substantial probative value of the challenged evidence, the district court did not abuse its discretion, much less commit plain error, by failing to exclude it.

Finally, Hector Peña makes a cursory argument that the murder-for-hire statute is unconstitutional because it "overrule[s] the authority of the State of New York to police within it's [*sic*] borders crimes by the use or with the use of the telephone." Hector Peña Supp. Br. 10. We have previously rejected a similar challenge to the murder-for-hire statute on the ground that the regulation of a facility of interstate commerce falls squarely within Congress's Commerce Clause power. *See United States v. McGriff*, 287 Fed.Appx. 916, 918 (2d Cir.2008) (summary order) ("[A] showing that a regulated activity substantially affects interstate commerce is unnecessary when Congress regulates activity involving an instrumentality or facility of interstate commerce." (citing *United States v. Gil*, 297 F.3d 93, 100 (2d Cir.2002))). Hector Peña provides no basis to disturb that conclusion.

## II. Jose Peña's Appeal

Jose Peña argues first, that the government failed to present sufficient evidence that he received anything of pecuniary value in exchange for committing the murders. This argument fails for substantially

the same reasons as discussed above with respect to Hector Peña. Bernardo Sabino testified that, before the murders, he told Jose Peña and an accomplice that "there was going to be a job for them," and explained "what [Acosta] wanted to do" and that "[Acosta] was willing to pay for [it]." Tr. 636–37. Ramon Flores testified that Jose Peña and the other conspirators received an up-front payment before the murders, and Sabino testified that he paid them the balance after the murders were complete. This evidence is more than sufficient to support the jury's verdict with respect to the pecuniary value element of 18 U.S.C. § 1958(a).

Second, Jose Peña argues that the district court abused its discretion by admitting evidence that he sold cocaine for Solid Gold and that he once enforced a drug debt owed to Solid Gold. Jose Peña argues that this evidence was inadmissible under Rule 404(b) of the Federal Rules of Evidence because the charged conduct—the murders of Jose Suarez and Juan Carmona—was unconnected to Solid Gold. Before trial, the district court initially denied the government's motion *in limine* to admit this evidence. However, in its motion for reconsideration, the government argued that the evidence was relevant to establish the relationship of trust and criminality between Jose Peña and the members of Solid Gold. This context was relevant, the government argued, to explain why Jose Peña would openly discuss his participation in the Suarez and Carmona murders with cooperating witnesses who were members of Solid Gold. The district court then ruled the evidence admissible.

Rule 404(b) provides that evidence of prior bad acts is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for another purpose, such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R.Evid. 404(b). We have "adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir.2004) (quoting *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir.2003)). To determine whether such evidence was properly admitted, we consider "whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *Id.* As with other evidentiary rulings, we review for abuse of discretion. *Id.* at 155.

In this case, the district court did not abuse its discretion by admitting the evidence of Jose Peña's past acts. The evidence was admitted for the proper purpose of explaining the "mutual trust" between Jose Peña and the cooperating witnesses who testified about incriminating statements that he made to them. *See United States v. Rosa*, 11 F.3d 315, 334 (2d Cir.1993). It was relevant to the cooperating witnesses' credibility, which the defendants repeatedly attacked on cross-examination and in summation. Furthermore, any prejudice did not substantially outweigh its probative value, as the evidence about Jose Peña's drug-related activities was not "more sensational or disturbing" than the conduct with which he was charged. *United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir.1990).

We have considered the defendants' remaining arguments and find them to be without merit. For the reasons given, we **AFFIRM** the judgments of the district court.