21-1291 (L)
*United States v. Collins*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of January, two thousand twenty-three.

PRESENT:

> RICHARD J. SULLIVAN,
> ALISON J. NATHAN,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

   *Appellee*,

  v.                Nos. 21-1291(L),
                      21-1305(Con)

VANCE COLLINS, RAMON RAMIREZ,

   *Defendants-Appellants*.*

_____

_____

* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Defendant-Appellant
Vance Collins:

ERIC R. BRESLIN (Arletta K. Bussiere, *on the brief*), Duane Morris LLP, Newark, NJ.


For Defendant-Appellant
Ramon Ramirez:

BEVERLY VAN NESS, New York, NY.


For Appellee:

ADAM S. HOBSON (Jamie Bagliebter, Hagan Scotten, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from judgments of the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Vance Collins and Ramon Ramirez appeal from judgments of conviction after a jury trial in which both men were found guilty of murder-for-hire and conspiracy to commit murder-for-hire, in violation of 18 U.S.C. § 1958, and Collins was found guilty of possessing a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Collins to 144 months' imprisonment, consisting of concurrent sentences of 120

2

months' imprisonment for the murder-for-hire counts and a consecutive term of twenty-four months' imprisonment for the felon-in-possession charge, and Ramirez to concurrent terms of 120 months' imprisonment for the murder-for-hire counts. On appeal, Collins and Ramirez raise four principal challenges to their convictions and sentences, which we address in turn. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I. Sufficiency of the Evidence

Ramirez and Collins challenge the sufficiency of the evidence underlying their murder-for-hire convictions in two respects. First, they contend that the evidence produced at trial was not sufficient to show that they hired Jakim Mowatt to kill Eric Santiago. Second, they contend that the government failed to prove that there was a sufficient nexus between the murder plot and the use of a facility of interstate commerce. While we generally review the sufficiency of the evidence de novo, *United States v. Yannotti*, 541 F.3d 112, 120–21 (2d Cir. 2008), we apply the plain-error standard to this second challenge because the argument pressed on appeal was not raised in the district court. *See United States v. James*, 998 F.2d 74, 78 (2d Cir. 1993).

"A defendant seeking to overturn a jury verdict on sufficiency grounds bears a heavy burden," because we will "uphold the conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Anderson*, 747 F.3d 51, 59 (2d Cir. 2014) (internal quotation marks omitted). When considering a sufficiency challenge, we view the evidence "in its totality, not in isolation," *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008) (internal quotation marks omitted), and "in a light that is most favorable to the government, . . . with all reasonable inferences resolved in favor of the government," *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (internal quotation marks omitted).

Here, there was more than sufficient evidence for the jury to conclude that Ramirez and Collins hired Mowatt to kill Santiago. The government adduced extensive evidence showing that Ramirez, after learning that Santiago was having an affair with his wife, hatched a plan with Collins to "take care" of the situation. App'x at 1038. At first, their plan was to hire someone to "beat up" Santiago, but the plan escalated to "murder" within months. *Id.* at 545, 550. The hired hitman, Mowatt, testified that he was promised $25,000 (among other benefits) for the job, and that he, in turn, recruited Barry Johnson to help carry out the hit. The

4

government's theory of the case was also supported by Ramirez's post-arrest statement, Johnson's testimony, Santiago's testimony, telephone records showing frequent contact among the co-conspirators and hitmen, and the contents of Mowatt's cell phone, which included Santiago's home address, photos of Santiago, and videos of the trips that Mowatt and Johnson had conducted to surveil Santiago. While Defendants maintain that Mowatt was not credible and insist that the plan was still to beat up, rather than kill, Santiago, the jury was certainly free to credit Mowatt's testimony that Defendants "wanted [Santiago] dead." *Id.* at 558. Since we must "defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony," we have no basis for disturbing the jury's verdict on appeal. *United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 159 (2d Cir. 2008) (internal quotation marks omitted).

Defendants' next argument – that the government failed to prove that the murder plot involved the use of a facility of interstate commerce – fares no better. Under section 1958, the government must prove that a defendant "use[d] or cause[d] another (including the intended victim) to use . . . any facility of interstate . . . commerce, with intent that a murder be committed." 18 U.S.C. § 1958(a). This jurisdictional element can be proven by, among other things,

5

showing that an intrastate call in furtherance of the murder plot was made on an interstate-telephone network. *See United States v. Perez*, 414 F.3d 302, 304–05 (2d Cir. 2005); *see also United States v. Francisco*, 642 F. App'x 40, 44 (2d Cir. 2016) (finding sufficient evidence to satisfy section 1958's jurisdictional element when pay phone was used to discuss murder plot).

Here, there was ample evidence showing that Defendants used their cell phones – which they stipulated operated on national networks – in furtherance of the plot to murder Santiago. App'x at 880–83. For example, Mowatt testified that Collins communicated the plan to kill Santiago by phone "a month or two" after the "summer of 2017," *id.* at 548, 558, and while Defendants argue that this call was not corroborated by the call records introduced at trial, the jury was free to credit that testimony while making allowances for the possibility that Mowatt may have been mistaken about the precise timing of the call. *See United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008) (explaining that we must draw "every inference that could have been drawn in the government's favor"). Mowatt also testified that he often called Collins with status updates concerning the murder-for-hire plot during his surveillance trips. The call records *did* corroborate these communications, and the government showed that Collins and

6

Ramirez spoke over the phone immediately after many of Mowatt's calls to Collins. And although there was no testimony as to what Collins and Ramirez discussed during these calls, the jury could have reasonably inferred, based on the timing of the calls and Mowatt's testimony, that these calls were made in furtherance of the plot to kill Santiago. We thus have no trouble concluding that the evidence produced at trial was sufficient to prove the jurisdictional element of section 1958.

## II. Fourth Amendment

Collins argues that the district court erred in denying his motion to suppress the three firearms seized from his home after he requested that officers permit him to retrieve a coat from his house following his arrest. "In an appeal from a district court's ruling on a motion to suppress, we review legal conclusions de novo and findings of fact for clear error." *United States v. Freeman*, 735 F.3d 92, 95 (2d Cir. 2013). Under the Fourth Amendment, "a search authorized by consent is wholly valid." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). The question of whether an individual consented to a search often turns on the credibility of witnesses. A district court's "factual determinations [as] to witness credibility" are entitled to "special deference." *United States v. Jiau*, 734 F.3d 147, 151 (2d Cir.

2013). Accordingly, when a district court's "finding is based on [its] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

Collins cannot show that the district court erred in determining that he consented to permit the officers to enter his residence and then voluntarily disclosed the location of three firearms. At the suppression hearing, Detective James Menton testified that Collins consented to the search after he was arrested outside his home. According to Menton, Collins was shivering from the cold when he asked if he could grab a jacket from inside his residence, which Menton permitted on the condition that Collins agree to let officers accompany him and conduct a protective sweep. In crediting Menton's testimony, the district court observed that Menton's version of events was consistent with several undisputed facts, including that Collins was shaking when officers arrested him, that Collins was not wearing a jacket before officers escorted him inside his house, that Collins left his home in a jacket, and that Collins never objected to the officers' entering his home or asked them to leave. Menton's testimony was also corroborated by

8

Supervisory Special Agent Brendan Kenney, who testified that, before he entered Collins's home, Menton told him that Collins had "requested to go back inside the house to grab a jacket." App'x at 206. Because Menton's testimony was coherent, plausible, and internally consistent, *see Anderson*, 470 U.S. at 575, we decline to disturb the district court's finding that Collins consented to the search.

Collins further argues that the district court erred in determining that his consent was voluntary under the totality of the circumstances. When the government seeks to justify a search based on consent, it "has the burden of proving that the consent was, in fact, freely and voluntarily given." *United States v. O'Brien*, 926 F.3d 57, 76 (2d Cir. 2019) (internal quotation marks omitted). Whether consent to a search "was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227. "Consent can be found from an individual's words, acts[,] or conduct." *Krause v. Penny*, 837 F.2d 595, 597 (2d Cir. 1988).

While Collins argues that the circumstances of his arrest were so "harrowing" that they would "intimidate nearly anyone," Collins Br. at 29, we discern no error in the district court's assessment of the evidence. The district

court acknowledged that, at the time Collins consented to the search, some officers still "had their weapons drawn" and that Collins "had already been arrested, was in handcuffs, and had not been read his *Miranda* rights." App'x at 430. But the district court also considered that no one had threatened Collins; that "Collins is an adult who understands written and spoken English; that he has past experience with law enforcement; and that he asked for and received a jacket from inside his house after being arrested outside." *Id.* After balancing these factors, the district court reasonably concluded that his consent was voluntary. We see no error in the district court's conclusion and have upheld findings of voluntariness in similar circumstances. *See, e.g.*, *United States v. Ansaldi*, 372 F.3d 118, 129 (2d Cir. 2004) (affirming finding of voluntary consent where defendant was arrested outside his house at gunpoint, placed in handcuffs, and advised of his *Miranda* rights), *abrogated on other grounds by McFadden v. United States*, 576 U.S. 186 (2015); *United States v. Puglisi*, 790 F.2d 240, 243–44 (2d Cir. 1986) (affirming finding of voluntary consent where defendant had been arrested and handcuffed by officers with weapons drawn before signing consent to search forms). Accordingly, the district court did not err in denying Collins's motion to suppress.[1]

---

[1] We do not reach the question whether the security sweep of Collins's home, including Menton's

### III.   Sixth Amendment

Collins next argues that his rights under the Sixth Amendment's Confrontation Clause were violated by the introduction of otherwise-inculpatory statements by Ramirez in which references to Collins were deleted or replaced by neutral pronouns.   "Alleged violations of the Confrontation Clause are reviewed de novo, subject to harmless[-]error analysis."   *United States v. Vitale*, 459 F.3d 190, 195 (2d Cir. 2006).   In a joint trial, the admission of a non-testifying defendant's confession is prejudicial error in violation of the Confrontation Clause only to the extent that it incriminates a co-defendant.   *See Bruton v. United States*, 391 U.S 123, 135–36 (1968).   But prejudice from such a confession may be avoided by a "non-obvious redaction" that removes "any references to the [non-testifying] defendant."   *United States v. Lyle*, 919 F.3d 716, 733 (2d Cir. 2019).   We determine whether modifications to the confession satisfy *Bruton* by considering whether they "remove the 'overwhelming probability' that a jury will not follow a limiting instruction that precludes its consideration of a redacted confession against a defendant other than the declarant."   *United States v. Jass*, 569 F.3d 47, 60 (2d Cir.

---

inquiry as to whether Collins had any firearms in the residence, was proper under the public-safety exception to *Miranda v. Arizona*, 384 U.S. 436, 439 (1966), because Collins has not raised the issue on appeal.

11

2009). Our Circuit has held that, in making this determination, we must view the redacted statement "separate and apart from any other evidence admitted at trial." *Lyle*, 919 F.3d at 733.

The redactions to Ramirez's post-arrest statement do not violate *Bruton*. In line with our precedent, the statement introduced at trial removed all references to Collins and replaced his name with either nothing at all or a neutral noun or pronoun. *See id.* ("We have consistently held that the introduction of a co-defendant's confession with the defendant's name replaced by a neutral noun or pronoun does not violate *Bruton*."). Collins argues that the repeated use of "you guys" and "the other guy" made it obvious that the statement was edited. Collins Br. at 35. But the government introduced each phrase into the transcript – which already included both of those neutral phrases – only once. As a result, it is far more likely that the jury would have concluded that those were Ramirez's and the officer's actual words, rather than a redacted or modified version of them. And while Collins speculates that a "sophisticated juror" listening to the statement would necessarily infer that it referred to Collins, Collins Br. at 36, the statement on its face – which neither obviously references Collins nor introduces awkward syntax – requires no such inference and could just as easily

12

have referred to someone else. *See United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989) (approving substitution of "others," "other people," and "another person" for names of co-defendants in confession of non-testifying defendant, "with no indication to the jury that the original statement contained actual names"). Considering the redacted statement "separate and apart from any other evidence admitted at trial," *Lyle*, 919 F.3d at 733, we cannot say that the district court erred in admitting Ramirez's post-arrest statement.[2]

## III. Sentencing

Ramirez challenges the procedural and substantive reasonableness of his below-Guidelines sentence of 120 months' imprisonment. We review Ramirez's procedural-reasonableness challenge for plain error because it was not raised in the district court, *see United States v. Ramos*, 979 F.3d 994, 998 (2d Cir. 2020), and

---

[2] While our Circuit has held that a co-defendant's redacted out-of-court confession should be assessed in "isolation," the Supreme Court has recently granted certiorari to determine whether such a statement should instead be considered in the context in which it is offered. *See Samia v. United States*, No. 22-196, 2022 WL 17586973 (Dec. 13, 2022). Nevertheless, we need not delay this appeal to await the Supreme Court's resolution of this issue, because even assuming that the district court erred in admitting Ramirez's post arrest statement, any such error was harmless beyond a reasonable doubt. *See Jass*, 569 F.3d at 64. As explained above, the properly admitted evidence of Collins's guilt was nothing short of overwhelming, consisting of the testimony of multiple witnesses (including the two hitmen) and a host of cell phone records, photographs, and videos that corroborated the murder-for-hire plot, among other evidence. Moreover, any prejudice inflicted by admitting Ramirez's statement was minimized by the fact that the statement itself was consistent with Collins's defense at trial – namely, that the plan was to "beat up," not murder, Santiago. App'x at 1044.

his substantive-reasonableness challenge for abuse of discretion, *see United States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014).

Ramirez first argues that his sentence was procedurally unreasonable because the district court failed to fully consider the sentencing factors outlined in section 3553(a). Specifically, he argues that the district court, in sentencing him and Collins to the same term of incarceration for the murder-for-hire counts, failed to consider the differences between Ramirez's and Collins's "background[s] and characteristics," and the fact that Ramirez would face deportation after serving his sentence. Ramirez Br. at 41–42. But while district courts are encouraged to consider such factors, they are by no means dispositive. *See United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) (noting that "disparities between co-defendants" is not a required sentencing consideration); *United States v. Thavaraja*, 740 F.3d 253, 263 (2d Cir. 2014) (noting that the "impact deportation will have on the defendant" is not a required sentencing consideration). At any rate, the record reflects that the district *did* consider this evidence – it simply did not give it the weight that Ramirez would have liked. *See* Ramirez App'x at 67 ("I have considered the histor[ies] and characteristics of the defendants."); *id.* ("[Ramirez is] a citizen of Nicaragua and will be deported following the completion of his sentence.").

Ramirez also contends that his sentence was substantively unreasonable. But the few lines Ramirez devotes to this section of his opening brief are devoid of any legal analysis. Because Ramirez references the substantive reasonableness of his sentence in a "perfunctory manner, unaccompanied by some effort at developed argumentation," he has waived this argument. *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (internal quotation marks omitted). Nevertheless, even if we were to reach the merits of this argument, we would not be persuaded that Ramirez's sentence is substantively unreasonable. To be substantively unreasonable, a sentence must be so "shockingly high, shockingly low, or otherwise unsupportable as a matter of law" that it would "damage the administration of justice." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). Far from being "shockingly high," Ramirez's sentence is actually well below the advisory Guidelines range of 210 to 240 months' imprisonment. On this record, it is "difficult to find that a below-Guidelines sentence is unreasonable." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011). We therefore conclude that the district court did not impose a substantively unreasonable sentence.

\* \* \*

We have considered Ramirez's and Collins's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court