RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee*,

  *v.*

ABRAHAM A. AUGUSTIN,

     *Defendant-Appellant*.

No. 20-5454

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:09-cr-00187-1—Travis Randall McDonough, District Judge.

Decided and Filed:  October 20, 2021

Before:  ROGERS, GRIFFIN, and THAPAR, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  J. Nicholas Bostic, Lansing, Michigan, for Appellant. Samuel R. Fitzpatrick, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

THAPAR, Circuit Judge.  In a drug deal gone wrong, Abraham Augustin kidnapped the middleman at gunpoint and—after he was rescued—tried to hire a hitman to murder him and two other witnesses.  A jury convicted Augustin of eight charges.  More than a decade later, Augustin sought postconviction relief, arguing that one of his convictions was unlawful under a recent Supreme Court decision.  The district court agreed.  So it corrected the error by vacating that

conviction and the relevant part of Augustin's sentence. On appeal, Augustin contends that the district court should have gone further and resentenced him entirely. We disagree and affirm.

## I.

In 2009, Abraham Augustin was looking to buy cocaine. He asked a man named Robert Jordan, whom he'd met at a local nightclub a week or two before. Jordan didn't deal cocaine, but he agreed to "find somebody" who did. R. 122, Pg. ID 854. So he contacted another man, "Hoss," who offered to sell Augustin six ounces of cocaine for $5,100. The trio met at a local gas station and sealed the deal.

But later that night, Hoss called Jordan. There was a problem: Augustin had shorted him $900. To set things straight, Jordan reached out to Augustin, who agreed to meet "first thing in the morning" to "pay up." *Id.* at 858. When Jordan arrived at the meeting place, Augustin was already there with his friend, Lorrance Dais. Dais sat in the driver's seat of Augustin's car. Augustin told Jordan to get into the passenger's seat while he got in the back. Once they were all inside, Augustin and Dais both "pulled out guns." *Id.* at 860. They told Jordan that "the dope was fake" and that he was being kidnapped. *Id.* at 862.

From there, Augustin and Dais blindfolded Jordan and bound him with zip ties. Augustin then drove to a field in the "middle of nowhere." *Id.* at 866. After Augustin parked the car, he and Dais ordered Jordan to get out and removed his blindfold. Augustin then gave Jordan his phone and said, "I'm going to give you a chance." *Id.* at 934. He demanded that Jordan get them the $4,200, the real cocaine, or access to Hoss.

Not knowing where else to turn, Jordan called his mother. He told her that he'd been kidnapped. But he didn't tell her the full story—he didn't want her to know he'd been part of a drug deal. Without that context, though, she didn't believe him. So Augustin put a gun to Jordan's head and forced him to tell her everything. In the end, she agreed "to try to get the money [the] best way she could" and to bring it to a nearby gas station. *Id.* at 869.

Jordan and his kidnappers waited for her to call with an update on the money. During that time, Jordan tried to explain that he didn't know anything about the fake cocaine. Augustin

didn't believe him. "I know you're lying to me," he said, and slid one bullet into the cylinder of his revolver. *Id.* at 872. And like a game of Russian roulette, Augustin then spun the cylinder, pointed the revolver at Jordan's head, and fired—click. It didn't go off. But to prove that the gun worked—and to show Jordan that nobody could hear them—Augustin fired a couple of shots at a passing bird.

Sometime later, Jordan's mother called to say she was on her way to the gas station. Augustin decided to meet her alone. Before leaving, though, he handed a firearm to Dais and told him to "use that one." *Id.* at 874. Dais and Jordan waited for hours. Dais tried calling Augustin, but he didn't answer. Night fell. Not knowing what else to do, Dais decided they should "walk back into town." *Id.* at 877. He removed the zip ties from Jordan's legs, and they started down the road.

But they didn't get far. Unbeknownst to them, Jordan's mother had called the police and told them that her son had been kidnapped and was being held for ransom. The police had arrested Augustin. And when they came across Dais and Jordan walking along the road, they arrested Dais too.

A couple of days later, however, a state-court judge released Augustin and Dais on bond. Shortly after, Augustin called Jordan: "If you don't show up in court and testify, you know, it's okay." R. 120, Pg. ID 670. Jordan, afraid for his life, contacted the FBI, who rearrested Augustin and Dais on federal charges.

But that didn't stop Augustin. A fellow inmate warned that Augustin was sending a letter to a friend looking "for somebody to help do away with the witnesses." *Id.* at 675. Officers retrieved the letter. In it, Augustin asked his friend to arrange three hits, offering to "pay double" for the "heads" of Jordan, Jordan's mother, and another witness. *Id.* at 695.

The government charged Augustin with nearly a dozen counts. After a trial, a jury convicted him of eight. The district court sentenced Augustin to 500 months in prison. He received concurrent terms for seven of the counts, the longest being 380 months. But on top of that, the district court sentenced him to a consecutive 120-month term under 18 U.S.C. § 924(c) for using a firearm during a crime of violence. Augustin challenged his convictions and sentence

on direct appeal. We affirmed. *See United States v. Dais*, 559 F. App'x 438 (6th Cir. 2014). He then filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, which was denied.

Later, Augustin filed a second or successive § 2255 motion. Among other things, he argued that his § 924(c) conviction was unlawful under a recent Supreme Court decision. He also asked the court to appoint counsel to help him challenge his § 924(c) conviction, represent him at a potential resentencing hearing, and explore other benefits to which he may be entitled.

The district court considered Augustin's § 2255 motion and agreed that *United States v. Davis*, 139 S. Ct. 2319 (2019), rendered his § 924(c) conviction unlawful. But rather than resentence Augustin, the court simply corrected his sentence by vacating the § 924(c) conviction and its consecutive 120-month sentence. It reasoned that a sentence correction was appropriate because vacating the § 924(c) conviction and sentence would "not impact the sentences he received on the other counts." R. 249, Pg. ID 2381. It also denied Augustin's motion for appointment of counsel. He appealed.

## II.

Augustin raises two issues on appeal. First, he argues that the district court should have resentenced him rather than correct his sentence. And second, he contends that the district court erred when it denied his motion for appointment of counsel. We review the district court's decisions for an abuse of discretion. *See Ajan v. United States*, 731 F.3d 629, 633 (6th Cir. 2013) (form of relief); *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986) (per curiam) (appointment of counsel). Finding none here, we affirm.

## A.

We begin with the district court's decision to correct Augustin's sentence rather than resentence him. In § 2255, Congress gave federal criminal defendants an additional chance to challenge their convictions and sentences. When, as here, a district court determines that a defendant's conviction is unlawful, it must "vacate and set the judgment aside." 28 U.S.C. § 2255(b). It can then choose one of several remedies. Among other things, the district court

can "resentence" the defendant or "correct" his sentence "as may appear appropriate." *Id.*; *see United States v. Flack*, 941 F.3d 238, 241 (6th Cir. 2019).

The distinction between the two matters. For one, resentencing is "open-ended and discretionary" and akin to "beginning the sentencing process anew." *United States v. Thomason*, 940 F.3d 1166, 1171 (11th Cir. 2019) (citation omitted). It often entails a "reevaluation of the appropriateness of the defendant's original sentence." *Flack*, 941 F.3d at 241 (alteration adopted and citation omitted). Because of the discretion involved in resentencing a defendant, a district court that takes this route must conduct a sentencing hearing with all the necessary components. *See id.* at 240–41 (explaining that a hearing must "occur in open court with the defendant present"); *see also United States v. Hadden*, 475 F.3d 652, 667 (4th Cir. 2007) (determining that the district court below had corrected the sentence in part because it "did not conduct any of the procedures that would have been required at a full-blown sentencing").

A sentence correction, by contrast, is a more limited remedy. It is "arithmetical, technical, or mechanical." *Flack*, 941 F.3d at 241. A district court corrects a sentence when, for example, it simply vacates "unlawful convictions (and accompanying sentences)" without choosing to reevaluate "the appropriateness of the defendant's original sentence." *Id.* (alteration adopted) (quoting *United States v. Palmer*, 854 F.3d 39, 42, 48 (D.C. Cir. 2017)). A hearing is often unnecessary. *Id.*

Although district courts have broad discretion to choose between these remedies, *United States v. Mitchell*, 905 F.3d 991, 994 (6th Cir. 2018), the facts may dictate that one is more appropriate. For example, resentencing may be necessary if the error "undermines the sentence as a whole" such that the district court *must* "revisit the entire sentence." *Thomason*, 940 F.3d at 1172. In that case, a court would need to start from scratch—that is, to recalculate the Guidelines range, reconsider the § 3553(a) sentencing factors, and "determine[] anew what the sentence should be." *Flack*, 941 F.3d at 241. Resentencing may also be necessary if a court must exercise significant discretion "in ways it was not called upon to do at the initial sentencing." *Thomason*, 940 F.3d at 1173 (citation omitted). For instance, if the court "vacates a mandatory-minimum sentence and then is able to consider the statutory sentencing factors for the first time." *Id.*

Here, the district court reasonably chose to correct Augustin's sentence rather than to resentence him.  First, the error did not undermine Augustin's entire sentence.  To be sure, there may be times when vacating one conviction in a multi-count judgment compels a court to reconsider an entire sentence.  But not every multi-count judgment "presents a sentencing package in which vacating the sentence on one count unravels the remaining sentences." *Palmer*, 854 F.3d at 49; *see also Thomason*, 940 F.3d at 1172; *Troiano v. United States*, 918 F.3d 1082, 1086–87 (9th Cir. 2019).  And vacating Augustin's § 924(c) sentence did not unravel the rest.  As the district court explained, vacating his § 924(c) sentence did "not impact the sentences he received on the other counts."  R. 249, Pg. ID 2381.  It didn't even affect Augustin's Guidelines range.  *See Thomason*, 940 F.3d at 1172–73; *see also Troiano*, 918 F.3d at 1087–88 (rejecting a similar challenge because the defendant's "Guidelines range would have remained" the same).  Both with and without the § 924(c) conviction, his Guidelines range was 360 months to life.  Thus, the error did not affect the remainder of Augustin's sentence.  So it can stand independently.

That's especially true here for another reason.  When Augustin was originally sentenced, circuit precedent required the district court to set an appropriate sentence for each underlying conviction without considering the sentencing effects of his § 924(c) conviction.  *See United States v. Franklin*, 499 F.3d 578, 583 (6th Cir. 2007).  Simply put, Augustin's § 924(c) sentence played no role in the district court's calculation of his other sentences.  Because of that, we cannot conclude that those sentences are so connected with his § 924(c) sentence that they must fall with it.

Second, the district court did not need to resentence Augustin because it did not exercise any new or significant discretion.  It never reevaluated "the appropriateness of the defendant's original sentence" or reconsidered the § 3553(a) factors from scratch.  *Flack*, 941 F.3d at 241 (alteration adopted and citation omitted).  The district court simply imposed a corrected sentence that was "largely consistent" with the rationale for Augustin's original sentence.  *Mitchell*, 905 F.3d at 994 (quoting *United States v. Nichols*, 897 F.3d 729, 738 (6th Cir. 2018)).  So the district court didn't have to conduct a resentencing hearing for this reason either.

In sum, the district court did not abuse its discretion by correcting Augustin's sentence rather than resentencing him.  Even if the district court could have held a resentencing hearing, Augustin was not entitled to one.

B.

Augustin also argues that the district court erred by denying his request for counsel.  It did not.[1]

As an initial matter, Augustin had no constitutional right to counsel when the district court was choosing whether to resentence him or correct his sentence.  To be sure, criminal defendants have a constitutional right to counsel at "critical stages" of criminal proceedings.  *Benitez v. United States*, 521 F.3d 625, 630 (6th Cir. 2008) (citation omitted).  But the "choice between correcting a sentence and performing a full resentencing" under § 2255 is part of a postconviction proceeding.  *United States v. Cody*, 998 F.3d 912, 915 (11th Cir. 2021).  And unlike criminal proceedings, there is generally "no right to counsel in postconviction proceedings."  *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  So Augustin had no right to counsel at that time.

Nor did he have a right to counsel when the district court actually entered the corrected sentence.  Again, the right to counsel only attaches at "critical stages" of criminal proceedings.  *Benitez*, 521 F.3d at 630 (citation omitted).  And the imposition of a corrected sentence is not one.  *Cf. Thomason*, 940 F.3d at 1171–72 (holding that, unlike a resentencing, a sentence correction is not a critical stage at which a defendant has the right to be present).  Instead, it is a mechanical act that does not present "a reasonable probability that [the defendant's] case could suffer significant consequences from his total denial of counsel at the stage."  *Van v. Jones*, 475 F.3d 292, 313 (6th Cir. 2007).

That said, district courts can appoint counsel in § 2255 proceedings if "the interests of justice so require."  18 U.S.C. § 3006A(a)(2), (a)(2)(B).  This standard "contemplates a peculiarly context-specific inquiry."  *Martel v. Clair*, 565 U.S. 648, 663 (2012).  Courts "should

---

[1]The government briefly suggests that correcting the sentence may have mooted the motion.  We disagree. Among other things, Augustin also sought counsel to help determine what other benefits he may have been entitled to under the law.  Those additional requests kept the motion alive.

consider the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, along with any other relevant factors." *Wiseman v. Wachendorf*, 984 F.3d 649, 655 (8th Cir. 2021) (citation omitted); *see also Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993).

Applying this standard, the district court did not abuse its discretion when it denied Augustin's request for counsel. *See Mira*, 806 F.2d at 638. First, the legal and factual issues in this case were not complex. Indeed, the relevant facts were simple—just the basic circumstances of Augustin's convictions and sentence. No additional investigation was required. And the legal issues were simple too: whether Augustin's § 924(c) conviction was unlawful under *Davis* and, if so, which remedy the court should pick. The government conceded that Augustin's § 924(c) conviction was unlawful. And the only other relevant issue was a narrow one—whether to resentence Augustin or to correct his sentence.

Second, Augustin was capable of presenting his arguments. Indeed, he thoroughly briefed his § 924(c) argument—even the government agreed that he was right. He also submitted a lengthy reply brief arguing for resentencing. That brief cited and discussed numerous relevant decisions from the Supreme Court and lower federal courts. On top of that, Augustin attached an appendix detailing information he wished to offer at resentencing, including evidence of his rehabilitation. This all shows he ably investigated and presented his arguments.

Taken together, we cannot conclude that the district court abused its discretion by denying his motion for appointment of counsel.

\*     \*     \*

We affirm.