24-3211-cr
United States v. Osuji

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of June, two thousand twenty-six.

PRESENT: DENNIS JACOBS,
ROBERT D. SACK,
RAYMOND J. LOHIER, JR.,
*Circuit Judges.*

------------------------------------------------------------------

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                                      No. 24-3211-cr

JOHN MURIUKU WAMUIGAH,
TOLULOPE SAMUEL BODUNDE,

*Defendants*,

OKECHUCKWU VALENTINE
OSUJI,

*Defendant-Appellant*.*

------------------------------------------------------------------

* The Clerk of Court is directed to amend the caption as set forth above.

FOR DEFENDANT-APPELLANT:  STEPHANIE M. CARVLIN, Law Office of Stephanie Carvlin, New York, NY

FOR APPELLEE:  NEERAJ N. PATEL (Elena Lalli Coronado, *on the brief*), Assistant United States Attorneys, *for* David X. Sullivan, United States Attorney for the District of Connecticut, New Haven, CT

Appeal from a judgment of the United States District Court for the District of Connecticut (Janet C. Hall, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings consistent with this order.

Okechuckwu Valentine Osuji appeals from the December 9, 2024 judgment of the United States District Court for the District of Connecticut (Hall, *J.*) convicting him after a jury trial of wire fraud, conspiracy to commit wire fraud, and aggravated identity theft in violation of 18 U.S.C. §§ 1343, 1349, 1028A, and 2, sentencing him principally to a term of 96 months' imprisonment, and ordering him to pay restitution in the amount of $1,559,397.68. We assume the

parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision.

## I. Sufficiency of the Evidence

Osuji first challenges the sufficiency of the evidence against him at trial. "We review a challenge to the sufficiency of the evidence *de novo* and must affirm if the evidence, when viewed in its totality and in the light most favorable to the [G]overnment, would permit any rational jury to find the essential elements of the crime beyond a reasonable doubt." *United States v. Calderon*, 785 F.3d 847, 850 (2d Cir. 2015) (citation modified). Here the trial evidence showed that an account associated with the charged fraudulent scheme was linked to Osuji's personal email account via cookies. Moreover, there was evidence that dozens of emails referencing other fraudulent schemes had been forwarded from Osuji's personal email account to an account used in the scheme charged in this case. Indeed, internet searches performed on an account used in the fraud closely corresponded to posts that Osuji admitted to making on his personal social media accounts. In addition, the Government introduced evidence that the laptop recovered from Osuji's residence had been used to log in to a recovery email for an account used in the fraud.

3

Viewing this evidence in the light most favorable to the Government, we have little trouble concluding that a rational jury could have found beyond a reasonable doubt that Osuji committed the charged offenses. *See United States v. Moses*, 109 F.4th 107, 116 (2d Cir. 2024).

## II.    Exclusion of Exhibits

Osuji also argues that the District Court improperly excluded two defense exhibits—Exhibits T and U—on authentication and hearsay grounds. Exhibit T is a printout of an online blog post that purported to include an image of an Instagram post made by "hushpuppi." Exhibit U is an enlarged version of the purported Instagram post.

Although "[t]he bar for authentication of evidence is not particularly high," *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007), "there must nonetheless be at least sufficient proof so that a reasonable juror could find in favor of authenticity or identification," *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (citation modified). "A trial court has broad discretion to determine whether a piece of evidence has been properly authenticated and its ruling will not be reversed absent an abuse of discretion." *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001). In this case, the District Court held that

Exhibits T and U were not properly authenticated for at least two reasons. Osuji could not confirm that Exhibit U was a post that actually appeared on "hushpuppi's" Instagram page or that the images and text in the exhibit were from the same post. Nor could Osuji explain who authored the blog post or how the author obtained the images. Given Osuji's inability to answer these basic questions about the two exhibits and to "provide a sufficient basis on which to conclude that the proffered printout[s] w[ere] what [he] claimed [them] to be," *Vayner*, 769 F.3d at 131, the District Court did not abuse its broad discretion in excluding the exhibits under Rule 901 of the Federal Rules of Evidence. Because we conclude that the District Court properly exercised its discretion on this basis, we need not address Osuji's challenge to the exclusion of the exhibits on hearsay grounds.

### III. Sentencing

Osuji advances several procedural challenges to his sentence.[1]

Osuji first argues that the District Court improperly relied on complaints filed through the Federal Bureau of Investigation's Internet Crime Complaint

---

[1] We apply the 2024 Sentencing Commission Guidelines Manual, which is the Guidelines Manual in effect on the date that Osuji was sentenced. *See* U.S.S.G. § 1B1.11(a).

Center ("IC3"), claiming that the IC3 complaints were unreliable.  We are unpersuaded.  A sentencing court must "assure itself that the information upon which it relies in sentencing . . . is both reliable and accurate."  *United States v. Pugliese*, 805 F.2d 1117, 1124 (2d Cir. 1987).  In determining the loss under the Guidelines amount a "district court's findings must be grounded in the evidence and not derive from mere speculation."  *United States v. Coppola*, 671 F.3d 220, 249 (2d Cir. 2012).  A district court "need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information."  *United States v. Constantinescu*, 147 F.4th 299, 314 (2d Cir. 2025) (citation modified).

Here, the District Court's reliance on the IC3 complaints was not an error.  Each of the IC3 complaints at issue was signed under penalty of false statement liability and contained the victim's name and contact information, a description of the alleged fraud, the email addresses associated with the alleged fraud, and the amount of the alleged loss.  Before adding the loss claimed in each IC3 complaint, the District Court considered whether there was "sufficient evidence of a connection" between each claim and the fraudulent scheme.  App'x 5873.  Under these circumstances, we are satisfied that the District Court properly

6

assured itself that the information in the IC3 complaints was "reliable and accurate." *Pugliese*, 805 F.2d at 1124; *see United States v. Nicolescu*, 17 F.4th 706, 721 (6th Cir. 2021). We therefore reject Osuji's argument that the District Court erred in relying on the IC3 complaints to calculate loss under the Guidelines, as well as Osuji's related argument that the IC3 complaints could not justify applying the sentencing enhancement for offenses involving 10 or more victims. *See* U.S.S.G. § 2B1.1(b)(2)(A)(i).[2]

Osuji next challenges the three-level enhancement the District Court imposed after finding that Osuji was the "manager or supervisor" of "criminal activity [that] involved five or more participants or was otherwise extensive." *Id.* § 3B1.1(b). We reject this challenge as well. To qualify for the enhancement, "a defendant need only manage or supervise one other participant." *United States v. Pristell*, 941 F.3d 44, 50 (2d Cir. 2019). As the District Court observed, the trial evidence showed that Osuji instructed his co-defendant to prepare fake documents and that his co-defendant took direction from Osuji. That is enough,

---

[2] Although Osuji also argues that the District Court erred in including intended loss in its loss calculation because § 2B1.1 of the 2023 Sentencing Guidelines, which was in effect during the first part of Osuji's sentencing hearing, did not define "loss" to include intended loss, he concedes that this argument is foreclosed by *United States v. Rainford*, in which we held that "loss" in § 2B1.1 of the 2023 Guidelines "encompasses intended loss." 110 F.4th 455, 475 (2d Cir. 2024).

in our view, to support the District Court's finding that Osuji acted as a manager or supervisor. *See United States v. Diamreyan*, 684 F.3d 305, 309 (2d Cir. 2012).

Osuji also challenges the District Court's finding that his criminal activity was "otherwise extensive" within the meaning of § 3B1.1(b) of the Guidelines. "The operative inquiry under the 'otherwise extensive' prong is whether the scheme was the functional equivalent of one involving five or more knowing participants." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 83 (2d Cir. 2018) (citation modified). Osuji faults the District Court for failing to make more specific factual findings on the record regarding the number of people involved in the criminal activity and for applying the wrong legal standard by failing to focus "primarily on the number of people involved." *United States v. Kent*, 821 F.3d 362, 369 (2d Cir. 2016). But "we may affirm a Guidelines enhancement on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely." *United States v. Broxmeyer*, 699 F.3d 265, 287 (2d Cir. 2012) (citation modified).

Here, the District Court expressly adopted the factual findings in the presentence report ("PSR"), which stated that the charged scheme involved several "known and unknown co-conspirators, along with numerous knowing or

8

unknowing money mules," in addition to Osuji and his two co-defendants. PSR ¶¶ 11, 55; *see* PSR ¶¶ 7–10. These findings are substantiated by the evidence, and support the District Court's determination that the criminal activity was otherwise extensive. *See United States v. Archer*, 671 F.3d 149, 166 (2d Cir. 2011); U.S.S.G. § 3B1.1 cmt. n.3.

Finally, Osuji challenges the application of the two-level enhancement in § 3C1.4 of the Guidelines for false registration of a domain name. Section 3C1.4 applies "[i]f a statutory enhancement under 18 U.S.C. § 3559(g)(1) applies." Section 3559(g)(1), in turn, provides that if a defendant convicted of a felony offense (other than one an element of which is the false registration of a domain name) "knowingly falsely registered a domain name and knowingly used that domain name in the course of that offense," the maximum term of imprisonment for that offense "shall be doubled or increased by 7 years, whichever is less." 18 U.S.C. § 3559(g)(1). In imposing the § 3C1.4 enhancement, Osuji contends, the District Court violated his rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the superseding indictment did not charge, and the jury did not find, that he had registered and used a false domain name.

We are unpersuaded. In *United States v. Confredo*, 528 F.3d 143, 153–56 (2d

Cir. 2008), we considered a similar sentencing enhancement under § 2J1.7 (now § 3C1.3) of the Guidelines, which instructed the sentencing court to "add 3 levels to the offense level for [an] offense committed while on release" "[i]f an enhancement under 18 U.S.C. § 3147 applie[d]." U.S.S.G. § 2J1.7 (1997). Section 3147, in turn, provided that a person convicted of a felony offense committed while on release shall be sentenced to an additional "term of imprisonment of not more than ten years" to run consecutively to any other sentence. 18 U.S.C. § 3147(1). We concluded that the application of the § 2J1.7 enhancement implicated *Apprendi* because it "expose[d] the defendant to the risk of a sentence that exceed[ed] the statutory maximum" otherwise applicable for the crime of conviction. *Confredo*, 528 F.3d at 153. But *Confredo* is distinguishable. Osuji faced a statutory maximum sentence of 86 years and received a sentence of 96 months. Under these specific circumstances, where the District Court clearly stated on the record that it could not sentence Osuji above the 86-year statutory maximum notwithstanding the § 3C1.4 enhancement, we reject, without more, Osuji's argument that the application of the § 3C1.4 enhancement "expose[d]" him to the risk of a sentence above the statutory maximum. *See id.* at 155.

In any event, any *Apprendi* error would have been harmless. As to *Apprendi*'s jury fact-finding requirement, there is "overwhelming evidence" that the jury would have found that Osuji registered and used false domain names in the commission of the charged offenses. *United States v. Peña*, 58 F.4th 613, 622 (2d Cir. 2023). Osuji stipulated that several of the frauds involved the use of misspelled domain names, and the Government's proof of Osuji's involvement in the fraudulent schemes was premised on Osuji's control of email accounts used to register false domain names used in the frauds. Under these circumstances, we are confident that "no reasonable jury could have found [Osuji] guilty beyond a reasonable doubt of the [charged offenses] . . . and simultaneously found that" Osuji did not knowingly register and use a false domain name in the commission of the fraud. *United States v. Friedman*, 300 F.3d 111, 128 (2d Cir. 2002).

Similarly, while the superseding indictment did not charge a violation of § 3559(g)(1), it alleged that Osuji furthered the conspiracy to commit wire fraud by creating fraudulent email accounts with slight spelling variations of "legitimate business[es], individual[s], or domain name[s]." App'x 22–23. The grand jury would certainly also have determined that probable cause existed to

11

conclude that Osuji registered and used a false domain name in furtherance of the conspiracy. *See Confredo*, 528 F.3d at 156. Accordingly, we hold that any *Apprendi* error stemming from the District Court's application of the § 3C1.4 enhancement would have been harmless.

## IV. Restitution

Finally, the parties agree that the District Court plainly erred in calculating the restitution amount for two victims who filed IC3 complaints. First, the District Court ordered $80,875.11 in restitution to IC3 complainant S.W. But S.W.'s IC3 complaint reported no loss. Second, the District Court concluded that IC3 complainant R. suffered an actual loss of $75,175.43. But R.'s IC3 complaint indicated a loss of only $50,173.43. Since "a sentencing court cannot order restitution that goes beyond making the victim whole," *United States v. Boccagna*, 450 F.3d 107, 117 (2d Cir. 2006) (citation modified), we vacate the restitution order and remand to the District Court for recalculation of the restitution award.

## CONCLUSION

We have considered Osuji's remaining arguments and conclude that they are without merit. For the foregoing reasons, we AFFIRM the judgment in all respects, except that we VACATE the restitution order and REMAND for the District Court to enter a modified restitution order consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court