*Gomez v. United States*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2022
No. 21-2632

**CARLOS GOMEZ,**
*Petitioner-Appellant,*

v.

**UNITED STATES OF AMERICA,**
*Respondent-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

SUBMITTED: NOVEMBER 22, 2022
DECIDED: NOVEMBER 21, 2023

---

Before:      KEARSE, PARK, and MENASHI, *Circuit Judges.*

Petitioner-Appellant Carlos Gomez appeals from the denial of his successive § 2255 motion challenging his conviction and accompanying sentence for using or carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). In his motion, Gomez argued that his § 924(c) conviction was invalid in light of *United States v. Davis*, 139 S. Ct. 2319 (2019). The district court denied

the motion because it determined that Gomez's § 924(c) conviction rested on the valid predicate crime of murder. The district court further held that its *Pinkerton* instruction—which permits a jury to convict a defendant of a substantive offense committed by his co-conspirators—did not undermine the validity of the § 924(c) predicate. We conclude that intentional murder under New York law, even when the conviction is based on a *Pinkerton* theory of liability, qualifies as a crime of violence within the meaning of § 924(c). Under a *Pinkerton* theory the defendant is convicted of the substantive offense—not of conspiring to commit the offense—so he has committed a crime of violence if the substantive offense is a crime of violence. Because *Pinkerton* does not transform a substantive offense into a conspiracy offense, it does not implicate *Davis*. Accordingly, we affirm the judgment of the district court.

---

Sarah Kunstler, Law Offices of Sarah Kunstler, Brooklyn, NY, *for Petitioner-Appellant*.

Brandon D. Harper, Hagan Scotten, Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Respondent-Appellee*.

---

MENASHI, *Circuit Judge*:

Petitioner-Appellant Carlos Gomez, currently incarcerated, appeals from the denial of his successive § 2255 motion to vacate his sentence for the use or carrying of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). In his motion, Gomez argued that his § 924(c) conviction—predicated on the murder of and

the conspiracy to murder Jose Gonzalez Santiago as charged in a racketeering count—must be vacated because the jury might have relied on a now-invalid conspiracy predicate. *See United States v. Barrett,* 937 F.3d 126, 128 (2d Cir. 2019) (holding that a conspiracy to commit a crime of violence such as Hobbs Act robbery is not itself a crime of violence in light of *United States v. Davis*, 139 S. Ct. 2319 (2019)), *vacated on other grounds*, 143 S. Ct. 1713 (2023).

The district court denied the motion. *United States v. Gomez*, No. 97-CR-696, 2021 WL 3617206 (S.D.N.Y. Aug. 16, 2021). It determined that Gomez's § 924(c) conviction rested on the valid predicate crime of intentional murder under New York law. The district court further concluded that its *Pinkerton* instruction—which permits a jury to convict a defendant of a substantive offense committed by his co-conspirators—did not undermine the validity of the substantive murder predicate as a crime of violence. *See Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946). Because we have not yet addressed the issue, the district court issued a certificate of appealability as to "whether the Court's jury instruction on *Pinkerton* liability affects the validity of an 18 U.S.C § 924(c) predicate." App'x 32.

We conclude that a conviction for intentional murder under New York law, even when the conviction is based on a *Pinkerton* theory, is a categorical crime of violence that can support a § 924(c) conviction. Under a *Pinkerton* theory the defendant is convicted of the substantive offense—not of conspiring to commit the offense—so he has committed a crime of violence if the substantive offense is a crime of violence. Because *Pinkerton* does not transform a substantive offense into a conspiracy offense, it does not implicate *Davis*. Accordingly, we affirm the judgment of the district court.

3

## BACKGROUND

In the 1980s and 1990s, Gomez founded and led the Westchester Avenue Crew, a Bronx-based heroin and cocaine distribution enterprise. Gomez was arrested in 1997 and was ultimately indicted on fifteen counts.

The superseding indictment charged Gomez with racketeering in violation of 18 U.S.C. § 1962(c) (Count 1). Among the racketeering acts, "Act of Racketeering One" was premised alternatively on the conspiracy to murder or the murder of Santiago in violation of New York law. Add. 4. In addition, Gomez was charged with using or carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count 10). This charge was predicated on "the conspiracy to murder and murder of Jose Gonzalez Santiago ... charged as Racketeering Act One in Count One, and in Counts Three and Four, of this Indictment." Add. 14.[1]

## I

At trial, the government presented evidence that Gomez personally ordered the killing of Santiago, provided the .38 caliber firearm used in the crime, and paid several thousand dollars to the person who carried out the killing. The government argued that Gomez ordered the murder in retaliation for the murder of one of Gomez's relatives, which Gomez believed may have been a failed attempt on his own life.

---

[1] Gomez was also charged with conspiracy to murder Santiago in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) and with the murder of Santiago in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1)-(2). Add. 8-10.

In instructing the jury on the racketeering count and its predicate acts, the district court explained the elements of second-degree murder under New York law. "Racketeering act 1(b) charges that he murdered and aided and abetted the murder of [Santiago]. Section 125.25 of the penal law of the State of New York makes it a crime to murder someone." Supp. App'x 42. "New York law says[] a person is guilty of murder when with intent to cause the death of another person he causes the death of such person or of a third person." *Id.*

The district court then explained that, in order to find Gomez guilty of violating § 924(c), there must be proof that Gomez either used or carried a firearm—or aided and abetted others in doing so—during and in relation to a crime of violence for which he could be prosecuted in federal court, "to wit, the conspiracy to murder and murder of [Santiago] charged in racketeering act 1 and count 1 and in counts 3 and 4 of this indictment." *Id.* at 48. The district court informed the jury that to "convict Mr. Gomez under count 10 you must find the government has proven beyond a reasonable doubt his involvement in either the conspiracy to murder [Santiago] or the murder of [Santiago], but not both." *Id.* at 49.

The district court instructed the jury on *Pinkerton* liability as follows:

> If, in light of my instructions, you find beyond a reasonable doubt that the defendant was a member of the conspiracy charged in the indictment, for example, the conspiracy to murder [Santiago], then you may also, but you are not required to, find him guilty of the corresponding substantive crime charged, in this example, the murder of [Santiago] and the use and

5

carrying of a firearm during and in relation to the conspiracy to murder and murder of [Santiago].

*Id.* The district court then explained that *Pinkerton* liability required findings that the substantive offense was committed by members of the conspiracy pursuant to a common plan or understanding and that the offense was reasonably foreseeable.

The jury convicted Gomez on four counts: racketeering (Count One), racketeering conspiracy (Count Two), using or carrying a firearm during a crime of violence (Count Ten), and narcotics conspiracy (Count Fifteen). As to racketeering, the jury found that *both* the murder of Santiago *and* the conspiracy to commit the murder had been proven. Add. 32. The jury convicted Gomez on the § 924(c) charge in relation to the same murder and conspiracy to murder. Add. 32-33.[2]

Pursuant to the then-mandatory Sentencing Guidelines, the district court sentenced Gomez to three concurrent life sentences—for racketeering, racketeering conspiracy, and narcotics conspiracy—

---

[2] Gomez was acquitted of Counts Three and Four, which had re-charged the racketeering acts as in-aid-of-racketeering federal crimes. Acquittal on these counts is consistent with the jury's racketeering conviction. As the district court explained, federal murder in aid of racketeering "adds an additional element to state murder law: [that] the murder be 'as consideration for ... anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity.'" *Gomez*, 2021 WL 3617206, at *3 (quoting 18 U.S.C. § 1959(a)). The government's theory was that Gomez ordered Santiago's murder as payback for what Gomez took to be an attempt on his own life. The jury could have found that Gomez was liable for the murder but lacked the requisite motivation for pecuniary gain or enhancement of position.

followed by a consecutive sixty-month sentence for the § 924(c) conviction.

## II

The jury convicted Gomez in September 1999 and he was sentenced in July 2000. In December 2001, we affirmed the judgment on direct appeal. *United States v. Feliciano*, 26 F. App'x 55, 57 (2d Cir. 2001). In March 2003, the district court denied Gomez's first § 2255 motion and declined to issue a certificate of appealability.

In 2021, we granted Gomez leave to file a successive § 2255 motion in light of *Davis*. The district court issued an opinion denying the motion but granted a certificate of appealability "regarding the issue of whether the Court's jury instruction on *Pinkerton* liability affects the validity of an 18 U.S.C. § 924(c) predicate." App'x 32. Proceeding *pro se*, Gomez appealed the judgment denying his § 2255 motion.

After the appeal was submitted, we ordered the appointment of counsel for Gomez and instructed the parties to address (1) whether the district court's instruction on *Pinkerton* liability affected the validity of Gomez's 18 U.S.C. § 924(c) conviction; (2) whether Gomez's claim is subject to the concurrent sentence doctrine; (3) whether Gomez's claim has been procedurally defaulted; and (4) whether any error was harmless.

## DISCUSSION

A federal inmate may move the district court to "vacate, set aside or correct" a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States … or [the sentence] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In reviewing the denial of Gomez's § 2255 motion, we review the district

7

court's legal conclusions *de novo* and defer to its findings of fact unless those findings are clearly erroneous. *Rivera v. United States*, 716 F.3d 685, 687 (2d Cir. 2013).

## I

We first consider the government's arguments for not reaching the merits based on the concurrent sentence doctrine, procedural default, and harmless error. We are unable to avoid reaching the merits on any of these bases.

## A

The concurrent sentence doctrine is "a rule of judicial convenience" that "allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of identical concurrent sentences since a ruling in the defendant's favor would not reduce the time served or otherwise prejudice him in any way." *Kassir v. United States*, 3 F.4th 556, 561 (2d Cir. 2021) (internal quotation marks and footnote omitted). In addition, we have discretion to apply the doctrine in the context of challenged *consecutive* sentences when (1) the collateral challenge will have no effect on the time the defendant must remain in custody and (2) the unreviewed conviction will not yield additional adverse collateral consequences. *Al-'Owhali v. United States*, 36 F.4th 461, 467 (2d Cir. 2022).

Gomez is currently serving three concurrent terms of life imprisonment for three separate counts, to be followed by a sixty-month sentence for the § 924(c) conviction that he now challenges through his § 2255 motion. He received his sentence when the Guidelines were understood to be mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005) (invalidating "the provision of the federal sentencing statute that makes the Guidelines mandatory").

8

The government argues that we should decline to consider the merits of Gomez's challenge based on the concurrent sentence doctrine because Gomez is serving multiple unchallenged life sentences. Gomez responds that if his challenge were successful, "it is possible, even probable, that [he] would receive a sentence of less than life on Counts One, Two and Fifteen at a re-sentencing." Appellant's Supp. Br. 34. Therefore, "the use of the concurrent sentencing doctrine as grounds to bar a resentencing would have the very real consequence of denying Mr. Gomez … a chance at a sentence of less than life imprisonment." *Id.*

We cannot conclude that Gomez's "collateral challenge will have no effect on the time [he] must remain in custody." *Al-'Owhali*, 36 F.4th at 467. If his challenge were successful, the district court would have "discretion to select the appropriate relief from a menu of options," which may include resentencing for sentences given when the Guidelines were mandatory. *United States v. Peña*, 58 F.4th 613, 619 (2d Cir. 2023); *see United States v. Augustin*, 16 F.4th 227, 232 (6th Cir. 2021) ("Resentencing may also be necessary if a court must exercise significant discretion in ways it was not called upon to do at the initial sentencing. For instance, if the court vacates a mandatory-minimum sentence and then is able to consider the statutory sentencing factors for the first time.") (internal quotation marks and citation omitted). We decline to avoid the merits of Gomez's challenge based on the concurrent sentence doctrine.

**B**

The government next argues that Gomez's challenge is procedurally defaulted. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either

cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted).

In this case, however, the government did not raise procedural default in the district court and therefore that defense is either waived or forfeited. Appellee's Supp. Br. 11 (acknowledging that the government has forfeited the procedural default defense); *see United States v. Canady*, 126 F.3d 352, 360 (2d Cir. 1997) ("[B]ecause the government failed to raise its procedural default defense in the district court, it is precluded from doing so now."); *Cone v. Bell*, 556 U.S. 449, 486 n.6 (2009) (Alito, J. concurring) ("Unlike exhaustion, procedural default may be waived if it is not raised as a defense."). We decline to avoid reaching the merits of Gomez's challenge on the basis of procedural default.

## C

We also cannot conclude, assuming the district court erred, that any error was harmless. "[I]n the context of a § 924(c) conviction, where a jury's finding of guilt is based on two predicates, only one of which can lawfully sustain guilt, we will find the error harmless when the jury would have found the essential elements of guilt on [an] alternative charged predicate that would sustain a lawful conviction beyond a reasonable doubt." *Stone v. United States*, 37 F.4th 825, 831 (2d Cir. 2022) (internal quotation marks omitted). We cannot be certain that the jury did not convict based on a *Pinkerton* theory. Assuming that it did, whether the *Pinkerton* instruction was harmless depends on the answer to the merits question before us. We therefore must turn to the merits.

## II

Gomez argues that his § 924(c) conviction is invalid because it may have rested on an impermissible conspiracy predicate and, even if it did not, the district court's *Pinkerton* instruction may have led the jury to find Gomez guilty of substantive murder by virtue of his participation in a conspiracy. We conclude that because the jury found that Gomez committed *both* substantive murder and murder conspiracy, there is no risk that the § 924(c) conviction was based on an impermissible predicate. The *Pinkerton* instruction does not alter this conclusion. Even if the jury relied on a *Pinkerton* theory to find that Gomez committed substantive murder, it still would qualify as a permissible predicate crime of violence.

### A

Section 924(c) criminalizes the possession or use of a firearm "during and in relation to any crime of violence ... for which the [defendant] may be prosecuted in a court of the United States." 18 U.S.C. § 924(c)(1)(A). "Crime of violence" is defined in two statutory provisions. First, the elements clause defines a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). Second, the residual clause defines a crime of violence as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B).

In *Davis*, the Supreme Court held the residual clause to be unconstitutionally vague. *See* 139 S. Ct. at 2336. As a result, a § 924(c) conviction remains valid only if it rests on a predicate offense that satisfies the definition in the elements clause. In other words, the underlying crime of violence must have "as an element the use,

attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

To determine whether a predicate crime satisfies the elements clause, courts "employ what has come to be known as the 'categorical approach.'" *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). The categorical approach requires a court to identify "the minimum conduct necessary for a conviction of the predicate offense … and then to consider whether such conduct amounts to a crime of violence under § 924(c)(3)(A)." *Id.* at 56. "For this analysis, we examine only the elements of the crime of conviction" because "the defendant's own conduct in committing the crime is irrelevant." *Collier v. United States*, 989 F.3d 212, 220 (2d Cir. 2021).

For a racketeering offense, we consider whether the racketeering offense is itself based on a predicate act that qualifies as a crime of violence. A racketeering offense is a "crime of violence when the defendant is charged under a predicate that is a crime of violence but [it is] not a crime of violence when the RICO charge is based on non-violent predicates." *United States v. Laurent*, 33 F.4th 63, 88 (2d Cir. 2022). "If one of the two racketeering acts required for a substantive RICO violation conforms to the definition of a crime of violence," then the "RICO violation ... qualif[ies] as a crime of violence." *Id.* at 88.[3]

---

[3] The rule for racketeering offenses is an application of the "modified categorical approach." Under that approach, when "a criminal statute sets forth any element of the offense in the alternative, such that the minimum elements of conviction can be proven in discrete ways, some necessarily requiring the use of force and some not, the statute may be deemed 'divisible.' ... Under the modified categorical approach, a court looks to the charging instrument or other authoritative documents to determine

12

**B**

Gomez argues that his § 924(c) conviction is invalid because "(1) the jury was not instructed that it needed to agree unanimously on a particular predicate offense, and (2) the verdict does not indicate on which predicate offense the jury based its § 924(c) conviction." Appellant's Supp. Br. 16-17. As a result, "there is no way to know from the jury's general verdict whether it found Mr. Gomez guilty of the [§] 924(c) count by virtue of the [now-invalid] conspiracy to murder racketeering act, or by virtue of the substantive murder racketeering act. *Id.* at 23.

We disagree. The jury returned a verdict indicating that it found that *both* the murder of and the conspiracy to murder Santiago had been proven beyond a reasonable doubt. Add. 32. Accordingly, the racketeering conviction is for a crime of violence because one of its predicates—murder under New York law—qualifies as a crime of violence. *See Laurent*, 33 F.4th at 88. Moreover, Gomez's § 924(c) conviction remains valid because there is no "reasonable probability" that the jury based the § 924(c) conviction only on the conspiracy when it determined that the murder had also been proved. *Id.* at 86 (quoting *United States v. Marcus*, 628 F.3d 36, 42 (2d Cir. 2010)). "[W]e can be confident that the jury would have convicted" even if it had been instructed that the § 924(c) conviction could be based only on the murder. *Id.* at 87 (internal quotation marks and alteration omitted).

Gomez argues that the district court's instruction on *Pinkerton* liability alters this analysis and renders his § 924(c) conviction invalid. "Given the court's instruction on *Pinkerton*, it is further possible that

---

whether a defendant necessarily was charged with or convicted of a crime involving the use of force under the subsection." *Laurent*, 33 F.4th at 85 (internal quotation marks, footnote, and emphasis omitted).

13

the jury's finding on the substantive racketeering act [of murder] rested on its finding that Mr. Gomez was a member of a conspiracy." Appellant's Supp. Br. 22. Because conspiracy to commit a crime of violence does not itself qualify as a crime of violence, *see Barrett*, 937 F.3d at 128, Gomez argues that *Pinkerton* liability for a crime of violence should not qualify either.

We again disagree. In *Pinkerton*, the Supreme Court held that a criminal defendant may be liable for a substantive offense—apart from a conspiracy charge—based on the actions of the defendant's co-conspirators. A *Pinkerton* instruction "informs the jury that it may find a defendant guilty of a substantive offense that he did not personally commit if it was committed by a coconspirator in furtherance of the conspiracy, and if commission of that offense was a reasonably foreseeable consequence of the conspiratorial agreement." *United States v. McCoy*, 995 F.3d 32, 63 (2d Cir. 2021), *judgment vacated on other grounds*, 142 S. Ct. 2863 (2022). The *Pinkerton* theory of liability deems the defendant to have performed the acts of his co-conspirators. "[S]o long as the partnership in crime continues, the partners act for each other in carrying it forward. It is settled that 'an overt act of one partner may be the act of all.'" *Pinkerton*, 328 U.S. at 646 (quoting *United States v. Kissel*, 218 U.S. 601, 608 (1910)).

Because under a *Pinkerton* theory the defendant is convicted of the substantive offense—not of conspiring to commit the offense—he has committed a crime of violence if the substantive offense is a crime of violence. For this reason, every circuit to address the issue has held that *Pinkerton* liability for a crime of violence can support a § 924(c) conviction. *See United States v. Henry*, 984 F.3d 1343, 1356 (9th Cir. 2021) (explaining that because "[d]efendants found guilty of armed bank robbery under either a *Pinkerton* or aiding-and-abetting theory are treated as if they committed the offense as principals," "*Davis* does

14

not conflict with or undermine the cases upholding § 924(c) convictions based on *Pinkerton* liability"); *United States v. Woods*, 14 F.4th 544, 552 (6th Cir. 2021) ("Finding the [defendants] guilty through a theory of *Pinkerton* liability is still permissible as long as the underlying predicate offenses qualify as crimes of violence under the § 924(c) elements clause."); *United States v. Gillespie*, 27 F.4th 934, 941-42 (4th Cir. 2020) ("It was precisely this still-valid theory of *Pinkerton* liability that the jury embraced when finding Gillespie guilty of the challenged § 924(c) conviction."); *United States v. Hernández-Román*, 981 F.3d 138, 145 (1st Cir. 2020) ("We have held that where, as here, *Pinkerton* liability is in play, the defendant does not need to have carried the gun himself to be liable under section 924(c).") (internal quotation marks omitted); *United States v. Howell*, No. 18-3216, 2021 WL 3163879, at *4 (3d Cir. July 27, 2021) ("[G]uilt may nonetheless be found for the § 924(c) offense under *Pinkerton* based on a coconspirator who also completed the armed Hobbs Act robbery.").

We agree with those circuits. Indeed, in summary orders, we have already reached the same conclusion. We have explained that *Pinkerton* liability does not "somehow transform [a] conviction for substantive bank robbery into one for bank robbery conspiracy, implicating the residual-clause concerns explored in *Davis*," *United States v. Blanco*, 811 F. App'x 696, 701 n.2 (2d Cir. 2020), and that a "conviction under *Pinkerton* or an aiding-and-abetting theory simply does not transform a substantive crime of murder into a murder conspiracy," *Sessa v. United States*, No. 20-2691, 2022 WL 1179901, at *2 (2d Cir. Apr. 21, 2022). And we have articulated the closely related conclusion that aiding and abetting a crime of violence suffices for a § 924(c) conviction. "If the underlying offense is a crime of violence, it is a predicate for § 924(c) liability; if the defendant aided and abetted

15

that underlying offense, he is guilty of the underlying offense," we have explained, and has been "convicted of crimes that are proper predicates for § 924(c) liability." *McCoy*, 995 F.3d at 58.[4] Similar to *Pinkerton* liability, the law imputes the acts of the principal to an aider and abettor. Thus, "[b]ecause an aider and abettor is responsible for the acts of the principal as a matter of law, an aider and abettor of a Hobbs Act robbery necessarily commits all the elements of a principal Hobbs Act robbery." *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016).

We see no reason for a different conclusion here. Even if the jury found Gomez guilty of murder based on a *Pinkerton* theory, Gomez's § 924(c) conviction would remain valid because the acts of his co-conspirators are imputed to him. *See Pinkerton*, 328 U.S. at 646 ("It is settled that an overt act of one partner may be the act of all.") (internal quotation marks omitted). That means the jury necessarily found that Gomez committed each element of the substantive offense of intentional murder under New York law.

Applying the modified categorical approach, we identify the minimum criminal conduct necessary for a conviction of second-degree murder under New York law and determine whether that conduct "has as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A). In identifying the minimum criminal conduct, we "focus on the intrinsic nature of the offense rather than on the circumstances of the particular crime." *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006).

We have previously held that, in New York, "second-degree murder is categorically a crime of violence under § 924(c)." *Stone*,

---

[4] In *McCoy*, we reaffirmed on remand that the completed Hobbs Act robbery—tried on an aiding-and-abetting theory—remained a valid § 924(c) predicate. *United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023).

37 F.4th at 833 (considering N.Y. Penal Law § 125.25(1)). New York law provides that a "person is guilty of murder in the second degree when ... [w]ith intent to cause the death of another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.25(1).

Second-degree murder under New York law is categorically a crime of violence because the "knowing or intentional causation of bodily injury *necessarily* involves the use of physical force." *United States v. Castleman*, 572 U.S. 157, 169 (2014); *see also United States v. Scott*, 990 F.3d 94, 100 (2d Cir. 2021) (explaining that it would be "illogical" to conclude that second-degree murder under N.Y. Penal Law § 125.25(1) was not "a categorically violent crime").

Even if the jury found Gomez to have committed second-degree murder on a *Pinkerton* theory, the law deems him to have committed the acts of his co-conspirators. Accordingly, his racketeering conviction is for a crime of violence and his § 924(c) conviction rests on a valid predicate.

## CONCLUSION

We conclude that Gomez's conviction for use or carrying of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), rested on a valid predicate crime of violence. We affirm the judgment of the district court.